lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff/Respondent, )<br>v. )<br>)<br>)<br>CORDELL NICHOLS, )<br>)<br>Defendant/Petitioner. )<br>_____) | Case No. 08-4116-JAR<br>02-40098-01-JAR |

## MEMORANDUM AND ORDER

On October 28, 2010, this Court issued a Memorandum and Order denying petitioner Cordell Nichols' motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 350). This matter is now before the Court upon Nichols' motion for reconsideration (Doc. 391)[1] as well as Motion for Transcripts (Doc. 390).

Local Rule 7.3(a) provides that "[p]arties seeking reconsideration of dispositive orders or judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60." Although Nichols' motion was not filed until November 18, 2010, it was placed in the prison mailbox within fourteen days of the Court's order,[2] and thus constitutes a motion to alter or amend under Fed. R. Civ. P. 59(e).[3] "Motions to alter or amend judgment are appropriate where they involve

---

[1]Defendant simultaneously appealed the Court's order to the Tenth Circuit Court of Appeals, which abated the appeal pending a decision on the instant motion (Doc. 395).

[2]*See Price v. Philpot*, 420 F.3d 1158, 1163-64 (10th Cir. 2005) ("The prison mailbox rule . . . holds that a pro se prisoner's [filing] will be considered timely if given to prison officials for mailing prior to the filing deadline, regardless of when the court itself receives the documents.") (internal citation omitted).

[3]*United States v. Pedraza*, 466 F.3d 932, 933 (10th Cir. 2006) (citation omitted).

reconsideration of matters properly encompassed in the decision on the merits."[4] "[A] Rule 59(e) motion to alter or amend judgment is essentially a motion for reconsideration."[5] "Reconsideration is proper when there has been a manifest error of law or fact, when new evidence has been discovered or when there has been a change in the relevant law."[6] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[7]

In this case, Nichols correctly points out that the Court overlooked the affidavit of Sheneice Sanders that was submitted as an attachment to his Motion to Supplement the Record, which the Court summarily granted. Accordingly, the Court grants Nichols' motion for reconsideration in part, and will address those portions of its order that are affected by Sanders' affidavit. For the reasons explained in detail below, however, the Court does not reconsider its ultimate determination that Nichols' motion to vacate pursuant to § 2255 should be denied.

## I. Background

The Court has previously summarized the procedural history and evidence at trial in its Memorandum and Order on Nichols' motion to vacate.[8] The Court incorporates that order herein and relies upon it by reference in ruling on the instant motion. The Court will not restate its findings in detail, but will provide excerpts from the opinion as needed to frame its discussion with respect to the issues on reconsideration.

---

[4] *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, 191 F. Supp. 2d 1209, 1213 (D. Kan. 2002).

[5] *Id.* at 1214.

[6] *Id.*; *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[7] *Servants of Paraclete*, 204 F.3d at 1012.

[8] (Doc. 350.)

Nichols' motion relates to the September 2000 search of the apartment he shared with his girlfriend, Sheneice Sanders. At the suppression hearing and at trial, respectively, Detective William Verhaeghe and Agent David Turner testified that they sought and received consent from Sanders to search the apartment, where they found heroin, two handguns, ammunition, and items associated with the distribution of heroin and cash. A latent fingerprint was developed from a grinder commonly used to grind heroin, and this print was subsequently matched to the known fingerprints of Nichols. At trial, an expert testified that the fingerprint on the grinder was Nichols'.

Nichols filed a direct appeal from his conviction, arguing, among other things, that this Court committed error when it denied his motions to suppress evidence seized during the St. Louis traffic stop and apartment search. The Tenth Circuit affirmed, specifically holding this Court "properly denied suppression of the evidence seized from the St. Louis apartment, which, as indicated above, was searched with the consent of its tenant, Sheneice Sanders."[9] Nichols also filed a second direct appeal after his resentencing, arguing, among other things, that law enforcement unlawfully searched his residence where they found the heroin and firearms. The Tenth Circuit held that it had already concluded in *Nichols I* that the search was lawful, which was now the law of the case.[10] The court further rejected Nichols' argument that his Confrontation Clause rights were violated by this Court's reliance on statements attributed to Sanders in the PSIR, and held that this Court properly found by a preponderance of the evidence

---

[9] *United States v. Nichols*, 374 F.3d 959, 966 (10th Cir. 2004) ("*Nichols I*").

[10] *United States v. Nichols*, 219 F. App'x 770, 773 (10th Cir. 2007) ("*Nichols II*").

3

that the gun enhancement was warranted.[11]

Nichols filed his § 2255 motion on October 6, 2008, citing numerous claims of ineffective assistance of counsel. These claims included allegations that former counsel erred by failing to subpoena Sanders for the suppression hearing and trial; failing to contest Sanders' consent at the suppression hearing; and failing to object to Sanders' statement that the guns found in their apartment belonged to Nichols, resulting in a two-point enhancement at sentencing. Nichols also made related allegations of prosecutorial misconduct, contending that Sanders informed the prosecutors that her consent was not voluntary, which the government withheld from the defense. Three months later, Nichols filed a Motion to Expand the Record, pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, which attached an affidavit of Sanders that he characterizes as newly discovered evidence.[12] The affidavit is dated October 28, 2008, and avers that Sanders was subpoenaed to testify as a prosecution witness at trial in 2003, that she does not know anything about what Nichols was or was not involved in while they were dating in 2000 or any other point in time, and that she relayed to prosecutors in Topeka in 2003 that the St. Louis agents forced their way into her home at gunpoint and threatened to take her to jail and take her children if she did not agree to sign a consent to search and statement.[13]

## II.  Discussion

As a threshold matter, the Court notes that its denial of Nichols' motion effectively

---

[11] *Id.* at 774.

[12] (Doc. 357, Ex. F.)

[13] *Id.*

rendered his motion to expand the record moot, as Rule 7 provides that a district judge may expand the record if needed if the motion is not dismissed.[14] Upon further consideration, the Court amends its previous ruling and construes Nichols' motion as seeking to supplement the evidence attached to his motion, which it grants. Thus, the Court will include Sanders' affidavit as part of the record, and will limit its discussion on reconsideration to the issues raised in Nichols' motion that are impacted by that affidavit.

The Court also reiterates that Nichols' motion is based on ineffective assistance of counsel. A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[15] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[16] Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.[17] A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[18]

### A. Failure to Investigate; Contest Sanders' Consent; Subpoena Sanders for Suppression Hearing

Nichols argues that his counsel was ineffective for failing to challenge Sanders' consent

---

[14]Rule 7(a) of the Rules Governing Section 2255 Proceedings.

[15]466 U.S. 668 (1984).

[16]*Id*. at 688.

[17]*Id*. at 687.

[18]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000) (quoting *Strickland*, 466 U.S. at 697) ("The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'"); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

5

to search her residence. He contends that "[t]he warrantless Search and Seizure of evidence from the residence of Cordell Nichols and Sheneice was conducted without consent, and violated the 4th Amendment." Nichols claims that the agents "did forcefully coerce Ms. Sheneice Sanders to open the door and put a gun to her in a threatening manner to coerce her to allow them to search," and lied to her by "[s]tating they were investigating a 'murder' and implying the death of Cordell Nichols." In support of this claim, Nichols attaches an affidavit from Damon Campbell, dated October 20, 2004, as well as the aforementioned Sanders affidavit. Intertwined with this claim are Nichols' additional arguments that counsel failed to investigate Sanders or subpoena her as a witness for the suppression hearing.

Generally, when a claim of ineffective assistance of counsel is brought because of the failure to raise an issue, courts consider the merits of the issue itself.[19] If the omitted issue is meritless, then the defendant has not met his burden to prove the error was prejudicial. Additionally, failure to raise a meritless issue does not constitute deficient performance.[20] Nichols' claim, however, is based on what he characterizes as newly discovered evidence that Sanders' consent was not voluntary, and had Chappas only interviewed Sanders, he would have discovered she was forced to consent to the search, which in turn, should have resulted in Chappas contesting her consent. This argument is more like an argument presented as part of a

---

[19] *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

[20] *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (stating that if an issue is meritless, not raising the issue is not deficient performance); *see also Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (stating that when an issue has some merit but is not compelling, counsel's decision not to raise the issue is given deference by the court).

new trial motion, and is not properly presented as a § 2255 motion.[21] Even considered as a motion for new trial, this argument falls short.

A five-part test must be applied in determining whether this "newly discovered evidence" warrants a new trial. A defendant must show (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by his own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.[22]

The Court previously addressed and rejected Campbell's representation. Likewise, little basis exists to credit Sanders' affidavit, which consists in large part of hearsay, specifically, that the agents and officers that conducted the search threatened to take her to jail and take away her children if she did not agree to sign a consent.[23] A district court is not required to consider hearsay statements in § 2255 actions and may, in its discretion, decline to consider them altogether.[24] Sanders' affidavit does not fall within a firmly rooted hearsay exception, and is thus considered unreliable unless it bears particularized guarantees of trustworthiness.[25] Sanders' affidavit bears no such guarantees. The affidavit was executed on October 28, 2008,

---

[21] *United States v. McElhiney*, No. 98-40083-RDR, 2006 WL 516879, at *4 (D. Kan. Mar. 2, 2006) (citing *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993)). Fed. R. Civ. P. 33 requires a motion for new trial based on newly discovered evidence be made within three years of the verdict or finding of guilty.

[22] *United States v. Holly*, 378 F. App'x 852, 853 (10th Cir. 2010) (citing *United States v. Quintanilla*, 193 F.3d 1139, 1147(10th Cir. 1999)).

[23] *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

[24] *See United States v. Rith*, 171 F. App'x 228, 232 (10th Cir. 2006); *Neil v. Gibson*, 278 F.3d 1044, 1056 (10th Cir. 2001).

[25] *See Paxton v. Ward*, 199 F.3d 1197, 1211 (10th Cir. 1999).

eight years after the date of the search of her residence in September 2000. Nichols does not offer any explanation as to why Sanders waited until now to make her statements. The affidavit was also prepared after Nichols' filed his § 2255 motion on October 6, 2008, and bears the same typeface and font size as the motion to which it is attached that was prepared by Nichols. Moreover, Sanders' purported signature is illegible and there is no authentication on the signature page. Accordingly, Sanders' affidavit lacks sufficient guarantees of trustworthiness to warrant this Court giving it any weight or credit.

Even if credible, Nichols has not demonstrated the evidence in Sanders' affidavit was not discovered until after trial. Nichols claim is belied by Chappas' cross-examination of Detective Verhaeghe at the suppression hearing, where he questioned him about details of the search that coincide with Nichols' current claims and representations in Sanders' affidavit. Specifically, Chappas cross-examined Verhaeghe about the search of the St. Louis apartment, asking if Sanders was handcuffed, whether her children were present, and if she was coerced into giving her consent.[26] Verhaeghe credibly answered no to each question.[27] Nichols' claim that this evidence is newly discovered is further belied by his own cross-examination of Agent Turner at trial, where he asked Turner if he coerced Sanders into consenting to the search.[28] Thus, Nichols' claim that he only discovered this new evidence by October 28, 2008, when Sanders executed the affidavit, is not supported by the record.

---

[26](Doc. 175 at 83.)

[27]*Id.*

[28]*Id.* at 326 ("Q. I'm saying was there any coercion in this consent? A. Oh. No, Sir."). Moreover, even if Nichols did not know of the evidence at trial, he apparently knew of this potential evidence as of October 20, 2004, when he submitted Campbell's affidavit executed that date, wherein Campbell declared he took the agents to Sanders' apartment and witnessed them handcuff her, opining that her consent was coerced. (Doc. 350, Ex. C).

Further, even assuming counsel should have challenged Sanders' consent and she had testified at the suppression hearing consistent with her affidavit, no basis exists to conclude that this Court would have found her credible, or that the result of the motion hearing would have been different. The Court is in the unique position of having already held a hearing in this case that revealed evidence directly relevant to the instant § 2255 motion. The Court observed Verhaeghe at the motions hearing and found his testimony credible. Accordingly, Nichols offers no plausible scenario for this Court to find that his counsel was deficient for failing to challenge the consent, or that he was prejudiced by such failure.

**B.     Failure to Subpoena Sanders at Trial**

Nichols argues that Chappas should have interviewed Sanders before trial "to ascertain the reliability of evidence to be used from the Search of the residence by the government in it[]s Case in Chief against Cordell Nichols." Even considering Sanders' affidavit, this claim is without merit. Assuming counsel was deficient in failing to subpoena Sanders as a trial witness, Nichols cannot show that he was prejudiced by any such denial. In fact, he could not have been prejudiced because the voluntariness of Sanders' consent was an irrelevant issue in Nichols' trial. The voluntariness of Sanders' consent could only have been relevant to Nichols' motion to suppress the evidence recovered from Sanders' residence, and, as previously discussed, this Court denied such motion before the trial. In contrast, at trial the voluntariness of Sanders' consent was irrelevant because this Court had already determined that the evidence found in the search of her apartment was admissible. Accordingly, this claim also fails.

**C.     Prosecutorial Misconduct**

Similarly, Nichols claims that the government withheld information that Sanders

9

informed prosecutors in 2003 that her consent was not voluntary.[29] Nichols appears to claim that this constitutes a *Brady* violation, and that counsel was ineffective for failing to discover or object to this prosecutorial misconduct.

As discussed in this Court's previous order with respect to Nichols' claim of misconduct regarding Trooper Weigel's testimony, to establish a *Brady* violation, a habeas petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the government suppressed the evidence; and (3) prejudice ensued from the suppression, *i.e.*, the suppressed evidence was material to guilt or punishment.[30] Assuming that Sanders' affidavit is correct, and she did inform the prosecution that her consent was not voluntary, the Court finds that such evidence is at best, merely impeaching, and would not produce an acquittal. Moreover, assuming the government withheld this information, it did not violate *Brady* because the evidence is insufficient to constitute material evidence, as the Court is convinced that there is no reasonable probability this evidence would have affected the outcome of his trial. While the allegedly suppressed evidence would certainly be impeaching, it in no way rises to the level of exculpatory evidence, which is defined as evidence that is material to the issue of guilt or innocence.[31] Both Verhaeghe and Turner testified credibly at the suppression hearing and trial, respectively, that Sander's consent was voluntary,[32] as affirmed twice by the Tenth Circuit. Suppressed impeachment evidence has little probative value if

---

[29]*Id*. at 16.

[30]*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

[31]*United States v. Bagley* , 473 U.S. 667, 676 (1985).

[32]*See* Doc. 176 at 83 (Verhaeghe); Doc. 235 at 276, 326 (Turner).

10

additional evidence strongly corroborates the witness's testimony the suppressed evidence might have impeached.[33] Accordingly, the Court's finding forecloses any success on the second *Strickland* prong relating to prejudice, and this claim fails.

### D. Firearm Enhancement

At Nichols' September 2003 resentencing, the Court imposed a two-level enhancement for possession of a firearm, which was found in Nichols' St. Louis apartment along with the heroin, and which Sanders identified as belonging to Nichols. The Court incorporates its findings set forth above with respect to Sanders' affidavit to the extent they apply to any claim of ineffectiveness regarding sentencing, and would only add that Sanders' affidavit does not state that the firearm and heroin did not belong to Nichols, but only that she does "not know anything about what Cordell R. Nichols was or was not involved in back then at our time of dating." This claim is also denied.

## III. Motion for Transcripts

Along with his motion for reconsideration, Nichols requests copies of transcripts of voir dire and jury selection at his May 2003 trial. "Under 28 U.S.C. § 753(f), an indigent defendant is entitled to have the government pay the fees for a copy of his transcript in a § 2255 proceeding only if he demonstrates that his suit is not frivolous and that the transcript is needed to decide the issue presented by the suit."[34] This standard must be met, whether or not the transcripts already exist.[35] Although transcripts were prepared for Nichols' direct appeals, it does not appear that

---

[33]*See Strickler v. Greene*, 527 U.S. 263, 292-94 (1999).

[34]*Sistrunk v. United States*, 922 F.2d 258, 259 (10th Cir. 1993).

[35]*Id.* at 260.

counsel requested transcripts from either voir dire or jury selection. In any event, Nichols fails to demonstrate how these materials relate to his specific claims in his § 2255 motion. "A prisoner does not have a right to a free transcript simply to search for error in the record."[36] Thus, Nichols' motion is denied.

IV.     **Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[37] A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[38] A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA. He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[39] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[40] For the reasons detailed in this Memorandum and Order, Nichols has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its

---

[36]*United States v. Adams*, Case No. 05-20084-KHV, 2007 WL 1302543, at *1 (D. Kan. May 3, 2007) (citing *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992)).

[37]28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[38]*Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[39]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[40]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).

ruling on reconsideration of his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner Nichols' motion for reconsideration (Doc. 391) is **granted** to the extent the Court considers the affidavit of Sheneice Sanders as part of the record, and **denied** with respect to the claims impacted by that affidavit; Nichols is also denied a COA.

**IT IS FURTHER ORDERED** that Nichol's Motion for Transcripts (Doc. 390) is **denied.**

**IT IS SO ORDERED.**

Dated: March 1, 2011

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE